**PENSION BENEFIT GUARANTY CORPORATION, Plaintiff,**

v.

**AMERICAN SHELTER INDUSTRIES, INC., et al., Defendants.**

No. 92–303–Civ–J–16.

United States District Court, M.D. Florida, Jacksonville Division.

May 11, 1993.

Brian M. Kane, U.S. Attorney's Office, M.D. Fla., Jacksonville, FL, Mark Blank, Deborah West, Gen. Counsel's Office, Washington, DC, for plaintiff.

John Finlay MacLennan, Smith, Hulsey & Busey, Jacksonville, FL, for defendants.

## ORDER

JOHN H. MOORE, II, Chief Judge.

This cause is before the Court on Plaintiff's Motion for Summary Judgement (docket no. 49). Defendants have filed timely responses (docket nos. 53 & 54). Also before the Court is Plaintiff's Motion to Substitute Exhibit to Plaintiff's Motion for Summary Judgment (docket no. 60).

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where, upon motion of a party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating, by references to the record, that no genuine issue of material fact remains. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Once the moving party has met its burden, the burden of production shifts to the non-moving party "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment will be entered

> after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the exis-

tence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Id.* at 322–23, 106 S.Ct. at 2552.

## BACKGROUND FACTS

Hardware Fair, Inc. established the Hardware Fair Employees Pension Plan (the Plan) effective February 1, 1966, to provide retirement benefits for particular employees. Hardware Fair is a subsidiary of Home Shops, Inc. which is a subsidiary of American Shelter Industries, Inc. On February 7, 1985, Home Shops filed a petition in the United States Bankruptcy Court for the Middle District of Florida (case No. 85–98–BK–J–11) under Chapter 11 of the Bankruptcy Code and ceased operations on May 3, 1985. On March 26, 1986, upon motion of Home Shops, the Chapter 11 petition was dismissed because the claims of Home Shops' secured creditors exceeded the assets available for distribution.

On August 28, 1990, the Plaintiff issued to Hardware Fair, in care of American Shelter, a Notice of Determination that the Plan had failed to meet the minimum funding standard as required by I.R.C. § 412, that the Plan would be unable to pay benefits when due, and that the Plan should be terminated. All of this was done pursuant to 29 U.S.C. §§ 1342(a) & (c). By agreement between American Shelter and Plaintiff dated September 26, 1990, the Plan was terminated, Plaintiff was appointed statutory trustee of the Plan, and March 26, 1986, was established as the Plan's date of termination. By letter dated March 19, 1992, Plaintiff demanded payment from American Shelter for its liability under 29 U.S.C. § 1362(b); and

by letter dated August 7, 1992, Plaintiff demanded payment from American Shelter for its liability under 29 U.S.C. § 1362(c). American Shelter has not made any payments with respect to its liability under these sections.

This suit followed. Plaintiff claims the Defendant corporations [1] constitute a "parent-subsidiary group of trades or businesses under common control" under I.R.C. § 414(c) and, therefore, are jointly and severally liable for the amount owed Plaintiff under 29 U.S.C. §§ 1362(b) & (c). Plaintiff further claims that Defendant Sisk Investments is a member of a "brother-sister group of trades or businesses under common control" under I.R.C. § 414(c) with American Shelter, and, therefore, is jointly and severally liable for the amount owed Plaintiff under 29 U.S.C. §§ 1362(b) & (c). All parties are in agreement that TM Ortega Woods Associates, Ltd., TM Orlando Creekwood Associates, Ltd., Lakeview Partners, Ltd., and Amshel Apartment Investor, Ltd.–II, were not trades or businesses under common control with Hardware Fair on March 26, 1986, and, therefore, should be dismissed.

## ARGUMENT

Plaintiff's first argument is that all of the Defendant corporations constitute a "parent-subsidiary group of trades or businesses under common control" as defined in I.R.C. § 414(c), thereby making each corporate defendant jointly and severally liable for the contributions owed to the Hardware Fair pension plan. The Defendant corporations agree with Plaintiff's calculations of the unfunded benefits liability and the deficiency in the minimum funding standards, but challenge the amount for which they could be held accountable.

█ The dispute centers around whether the 1986 amendments to 29 U.S.C. § 1362(b), effective for plans terminated between January 1, 1986, and December 17, 1987, are applicable to this case or whether the 1987

amendments, effective for all plan terminations after December 17, 1987, are applicable. The 1986 amendments provided that liability would

include the total amount of the unfunded guaranteed benefits under a plan, unless net worth is a limiting factor. If it is determined that net worth is limiting, the employer liability is reduced to the greater of (a) 30% of the collective net worth of the employer and its controlled group, or (b) 75% of the total amount of unfunded guaranteed benefits.

*In re Chateaugay Corp.*, 115 B.R. 760, 783 (Bkrtcy.S.D.N.Y.1990). The 1987 amendments provided that

the liability to the corporation of a person described in subsection (a) shall be the total amount of the unfunded benefit liabilities (as of the termination date) to all participants and beneficiaries under the plan, together with interest (at a reasonable rate) calculated from the termination date in accordance with regulations prescribed by the corporation.

29 U.S.C. § 1362(b)(1)(A); *see also*, P.L. 100–203, § 9312(b)(2)(A) (1987).

In order to determine which law is applicable it is first necessary to establish when the Plan was terminated. Defendants claim that because a Notice of Intent to Terminate was submitted during 1986, the 1986 amendments control. Defendants contention would be correct if the Plan had actually "terminated" as a result of the submission of the notice. It is without contention, however, that the Plan terminated on September 26, 1990, upon agreement between Plaintiff and Defendant American Shelter. This agreement resulted after the Plaintiff issued to Hardware Fair on August 28, 1990, a Notice of Determination, in accordance with 29 U.S.C. § 1342, that the Plan had failed to meet the minimum funding standard required under 26 U.S.C. § 412, that the Plan would be unable to pay benefits when due, and that the Plan should be terminated. Because the Plan ter-

---

1. On May 28, 1992, Showplace Homes, Inc. was dismissed from this action upon stipulation with the Plaintiff. At the Final Pretrial Conference held April 27, 1993, the parties represented that a settlement has been reached with Jaks Hard-

ware Co. Accordingly, when the Court refers to the "Defendant corporations" it is referring to all remaining corporate defendants and not Showplace Homes, Inc. or Jaks Hardware Co.

minated as a result of "proceedings ... instituted by [Plaintiff] under section 4042 [29 U.S.C. § 1342] of ERISA after December 17, 1987," P.L. 100–203, § 9312(d)(1)(B), included as a note to 29 U.S.C.S. § 1301, the 1987 amendments to 29 U.S.C. § 1362(b) control. This Court finds, therefore, that the amount of liability owed to Plaintiff is $293,600.00 for unfunded benefit liabilities and $229,608.00 for the amount required to meet the minimum funding standards.

■ Defendants argue that Sisk Investments was not a "trade or business" for purposes of I.R.C. § 414(c). This argument, however, is without merit. "Due to [the] lack of a definition of 'trade or business' in § 414(c), [courts have] determined that '[i]n the absence of clear guidance from 26 U.S.C. § 414(c), or even from the Internal Revenue Code in general, the meaning of "trade or business" should be interpreted in light of the intentions of ERISA.'" *Central States, Southeast and Southwest Areas Pension Fund v. Lloyd L. Sztanyo Trust*, 693 F.Supp. 531, 536 (E.D.Mich.1988) (quoting *United Food and Commercial Workers Union v. Progressive Supermarkets*, 644 F.Supp. 633, 638 (D.N.J.1986)). This Court will follow the lead of these other courts and look to the purpose of ERISA in making its determination of whether Sisk Investments was engaged in a trade or business.

> The purpose of ERISA is to prevent trades or business from limiting their responsibilities under ERISA by fractionalizing their business operations. * * * "Congress wanted to correct [the lack of payment of vested benefits due to plan termination] by making sure that if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—that he actually receive it." * * * In accordance with this purpose, § 1301(b) utilized control group liability to prevent businesses from "juggl[ing] their activities to eviscerate the termination liability provisions of ERISA."

*Id.* at 536–37 (citations omitted). Looking at the facts in this case, this Court concludes that Sisk Investments is a trade or business for purposes of I.R.C. § 414(c).

Sisk Investments is listed as a sole proprietorship on Schedule C of John Sisk's 1986 tax return. The nature of the business is listed as "Real Estate Brokerage" and "Real Estate." Mr. Sisk claimed he "materially participated" in the business. Mr. Sisk also claimed a business loss of over $63,000 from Sisk Investments in 1986 and a loss of over $220,000 in 1987. Mr. Sisk now claims that Sisk Investments was not a business but merely a name used by his accountants when compiling his tax returns. His affidavit states:

> Sisk Investments is a name used by his accountants in preparing his personal income tax returns. At no time has Sisk Investments had any assets at all separate and apart from his personal individual assets. The income shown for Sisk Investments were commissions received by Mr. Sisk as an insurance broker on the purchase of insurance policies on himself. The expenses shown with respect to Sisk Investments represent expenses incurred by Mr. Sisk in connection with his investments. At no time did Sisk Investments have any employees. At no time did Sisk Investments carry on a trade or business. At no time were funds of Sisk Investments commingled with any other the other [sic] defendants in this action.

Affidavit of John K. Sisk, April 19, 1993, ¶ 4.

Defendant Sisk Investments relies on *Textile Workers Pension Fund v. Oltremare*, 764 F.Supp. 287 (S.D.N.Y.1989), in support of its position that the ownership of real property is not a trade or business for ERISA purposes. While noting that "when ownership of real property has been considered a trade or business within a control group, there has been a solid nexus between the real property and the other trades or businesses within the control group," *Id.* at 289, the court, in holding that defendant's ownership of real property was not a trade or business, found that the plaintiffs had

> failed to allege *any* connection between the Haverstraw property and the commonly-controlled corporations [engaged in the business of dying fabric or leasing equipment used in dying fabric]. Indeed, the allegations establish that since [defendant]

took the property back in 1981 the property has been nothing more than a personal asset similar to a custody account with a bank, an asset the plaintiffs concede could not be a trade or business under ERISA's common control provisions.

*Id.* (emphasis in original).

The facts are very different here. The Defendant corporations were all engaged in either the real estate business or in the retail sale of hardware goods. American Shelter Industries, Inc., on its 1985 tax return, is listed as engaged in the "REAL ES-TATE/RETAIL" business selling "PROP-ERTY/HARDWARE". This Court finds that a nexus exists between Sisk Investments and the other Defendant corporations to impose liability upon Sisk Investments under ERISA.

This Court finds that Hardware Fair, Inc. is a "contributing sponsor" within the meaning of 29 U.S.C. § 1301(a)(13); that the Defendant corporations form a "Parent-subsidiary group of trades or businesses under common control" under I.R.C. § 414(c); *see* Treas.Reg. § 1.414(c)–2(b); that American Shelter Industries, Inc. and Sisk Investments form a "Brother-sister group of trades or businesses under common control" under I.R.C. § 414(c); *see* Treas.Reg. § 1.414(c)–2(c); and that the Defendant corporations and Sisk Investments form a "Combined group of trades or businesses under common control" under I.R.C. § 414(c). *See* Treas. Reg. § 1.414(c)–2(d). Therefore, each of the Defendants is liable for the underfunding of the Hardware Fair Pension Plan.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. Plaintiff's Motion to Substitute Exhibit to Plaintiff's Motion for Summary Judgment (docket no. 60) is GRANTED. John K. Sisk's 1986 tax return shall be substituted for his 1987 tax return attached as Exhibit 16 to Plaintiff's Motion for Summary Judgment.

2. This Court has been notified that the cause against Defendant Jaks Hardware Co. has been settled; therefore, in accordance with Rule 3.08(b) of the Local Rules of the Middle District of Florida, the cause against Defendant Jaks Hardware Co. is hereby DISMISSED subject to the right of any party to move the Court within thirty (30) days of the date of this Order to enter a stipulated form of final order or judgment or to show good cause why the case should be reopened for further proceedings. Accordingly, Plaintiff's Motion for Summary Judgment against Defendant Jaks Hardware Co. is MOOT.

3. Defendants TM Ortega Woods Associates, Ltd., TM Orlando Creekwood Associates, Ltd., Lakeview Partners, Ltd., and Amshel Apartment Investor, Ltd.–II, are hereby DISMISSED.

4. Plaintiff's Motion for Summary Judgment (docket no. 49) is GRANTED. The clerk shall enter judgment in favor of the Plaintiff Pension Benefit Guarantee Corporation and against all remaining Defendants in the amount of $523,208.00.

**DONE AND ORDERED.**