**Ram R. BELLAM, M.D., Plaintiff,**

v.

**MEDICAL CENTER ANESTHESIOL-OGY OF ATHENS, P.C., et al., Defendants.**

**No. 3:96–CV–53(DF).**

United States District Court, M.D. Georgia, Athens Division.

Oct. 27, 1997.

Abdulhakim Saadiq, Decatur, GA, for plaintiff.

John Jenkins Barrow, Gene Mac Winburn, Douglas C. McKillip, Athens, GA, Linda A. Klein, Irwin W. Stolz, Jr., Seaton D. Purdom, Atlanta, GA, for defendants.

## ORDER

FITZPATRICK, District Judge.

Before the Court is Defendants' motion for summary judgment. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, 41 U.S.C. § 1981, and various state law claims, alleging that Defendants discriminated against him on the basis of his national origin by creating a hostile environment and causing his termination and that Defendants retaliated against

Plaintiff for filing a complaint with the EEOC.

## I. FACTS

Plaintiff, Ram Bellam, M.D., whose national origin is Indian, is an anesthesiologist licensed to practice in the State of Georgia. Plaintiff had been employed at Athens Regional Medical Center for approximately three years when, in July 1995, the Medical Center of Anesthesiology of Athens, P.C. ("the Corporation") was formed, with which Plaintiff became employed. This corporation provides anesthesiology services to Athens Regional Medical Center ("Athens Regional").

Dr. William Buhrman, one of the defendants herein, served as both the President of the Defendant Corporation and Clinical Director of the Anesthesia Department of the medical staff at Athens Regional during the time this controversy arose. In both capacities, Dr. Buhrman supervised and directed the "on call" responsibilities of the physician employees of the Corporation, which included ensuring that anesthesiologist employees of the Corporation were available for surgical procedures at Athens Regional.

Dr. Buhrman became aware that certain surgeons at Athens Regional deemed Plaintiff incapable of providing reliable anesthesiology care to their surgical patients; some surgeons refused to allow Plaintiff to serve as the attending anesthesiologist in any of their surgical procedures. As such, Dr. Buhrman was forced to provide an additional on-call anesthesiologist whenever Plaintiff was scheduled to be on-call. As a result, the other anesthesiologists employed at the Corporation were required to assume more than their fair share of the on-call responsibilities for the Corporation, for which they were not compensated. Plaintiff was the only anesthesiologist employee of the Corporation with whom any of the surgeons on staff at Athens Regional refused to work.

Dr. Buhrman and the other anesthesiologist employees of the Corporation decided that it was necessary for Plaintiff either to resign his employment with the Corporation or be terminated as an employee. On November 20, 1995, this decision was communicated to Plaintiff. Plaintiff requested that the issue of his clinical competence be submitted to the peer review process administered by the medical staff of Athens Regional. Until the Corporation made the decision whether to grant Plaintiff's request, Plaintiff remained on leave of absence with pay and benefits at the rate appropriate for an anesthesiologist who does not take calls.

On November 30, 1995, the Corporation notified Plaintiff's attorney, by letter, that Defendants agreed to accept Plaintiff's request to submit Plaintiff's competence determination to peer review. On the same day, Plaintiff's attorney notified the Corporation's attorney of his resignation of his medical staff privileges at Athens Regional. Consequently, Plaintiff's employment as an anesthesiologist at the Corporation was terminated, because continued employment as an anesthesiologist employee of the Corporation is contingent on maintaining medical staff privileges at Athens Regional.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c); *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1532 (11th Cir. 1994). If the moving party demonstrates that there is "an absence of evidence to support the non-moving party's case," the burden shifts to the non-moving party to go beyond the pleadings and present specific evidence giving rise to a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

In reviewing a motion for summary judgment, the court must construe the evidence and all inferences drawn from the evidence in the light most favorable to the non-moving party. *WSB–TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988). Even if there exists some alleged factual dispute between the parties, summary judgment is not necessarily improper; there must be a genuine issue of *material* fact to render summary judgment

improper. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## III. CONCLUSIONS OF LAW

### A. Title VII, Disparate Treatment Claim

Title VII prohibits employers from discriminating against an employee on the basis of that employee's race, color, religion, sex, or national origin. Under Title VII, the plaintiff-employee has the burden of proving by a preponderance of the evidence that the defendant-employer intentionally engaged in unlawful discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

Dr. Bellam does not have direct evidence showing that Defendants discriminated against him because his national origin is Indian. Therefore, Dr. Bellam must prove his case through circumstantial evidence.

A plaintiff may prove a claim of race discrimination through the use of circumstantial evidence by utilizing the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under this framework, a plaintiff must

> create an inference of discrimination by establishing a prima facie case. If he does so, the defendant must 'articulate some legitimate, nondiscriminatory reason for [its action].' The plaintiff may then attempt to show that these reasons are pretextual or may present other evidence to show that discriminatory intent was more likely the cause of the employer's actions.

*Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir.1984) (internal citations omitted).

■ A plaintiff who is terminated for misconduct can make out a prima facie case of unlawful discrimination by showing that (1) he is a member of a protected class, (2) he was qualified for the job from which he was

fired, and (3) the misconduct for which he was discharged was nearly identical to that engaged in by an employee outside the protected class whom the employer retained. *Nix*, 738 F.2d at 1185. Once the plaintiff establishes all three prima facie elements, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its decision adverse to the plaintiff. *Burdine*, 101 S.Ct. at 1094.[1] If the defendant meets this burden, the plaintiff has the opportunity to show that "the proffered reason was not the true reason for the employment decision." *Id.* at 1095. The plaintiff may accomplish this directly by producing credible evidence on which a reasonable jury could find that a discriminatory reason more likely motivated the defendant, or indirectly by producing credible evidence on which a reasonable jury could find that the reason given by the defendant was not the real reasons for the employment decision. *Id.; Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997).

■ That Dr. Bellam is a member of a protected class is undisputed. Additionally, for purposes of summary judgment, Defendants are willing for the Court to assume that the position was filled by a person who does not belong to a protected class. Plaintiff suggests, and Defendants do not dispute, that Plaintiff possesses the necessary credentials necessary for the job as anesthesiologist at the Corporation. However, Plaintiff fails to establish the third element of a prima facie case.

In his response to Defendants' motion for summary judgment, Plaintiff makes the bald assertion that he was "forced to resign while others with similar complaints remained with the corporation." Plaintiff fails, however, to produce any evidence showing that he was discharged for conduct nearly identical to that which his white colleagues engaged in but were retained by the corporation. *Nix*, 738 F.2d at 1185. Plaintiff has not shown any instances in which any of his colleagues had similar complaints waged against them

---

1. Although the burden of production shifts between the plaintiff and defendant, the burden of persuasion remains at all times with the plaintiff. *United States Postal Service Bd. of Governors v.*

*Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.E.2d 403 (1983); *EEOC v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1569 (11th Cir.1993).

and yet were not forced to resign from the Corporation. Defendants contend that there were no similar complaints waged against any of Plaintiff's colleagues; Plaintiff fails to rebut this contention. Consequently, the circumstances surrounding Plaintiff's resignation do not give rise to an inference of unlawful discrimination. *Id.*

Even if Plaintiff was able to establish a prima facie case, Defendants have produced evidence of a legitimate, nondiscriminatory reason for Plaintiff's termination, which Plaintiff has failed to rebut. Plaintiff is unable to produce any evidence on which a reasonable jury could find that a discriminatory reason more likely motivated Defendants or that the reason given by Defendants was not the real reason for Plaintiff's termination. *Combs,* 106 F.3d at 1528. Plaintiff's claim is based on his perception that his colleagues were unfriendly to him and his speculation that they would make more money if he was discharged. Yet, Plaintiff has not produced one scintilla of evidence that his treatment by his colleagues had anything to do with his national origin. Defendants, in contrast, have produced evidence that suggests that if Plaintiff's colleagues were in fact unfriendly toward Plaintiff, it was due to Plaintiff's incompetence and the resulting need to "double up" on-call duty.

Thus, in his suit, Plaintiff relies exclusively on the fact that he is Indian and that he was forced to resign from a group of doctors who did not belong to the same racial group. These facts, alone, however, do not create an inference that Defendants' real motive for discharging Plaintiff was unlawful discrimination. Title VII does not provide relief to all employees who feel they have been unfairly discharged. Under Title VII, an employer may terminate an employee for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix,* 738 F.2d at 1187. While Plaintiff may not agree with Defendants' actions, nothing he has presented to the Court suggests that those actions were because of Plaintiff's national origin. As a result, Plaintiff may not proceed with his Title VII claim.

## B. Retaliation

The burden of proof in retaliation cases under Title VII is governed by the same framework as *McDonnell Douglas* and *Burdine.* In order to survive summary judgment, Plaintiff must first establish a prima facie case of retaliation by showing that (1) he engaged in actions protected by Title VII, (2) an adverse employment action was taken against him, and (3) a causal link exists between the protected actions and the adverse employment decision. *Meeks v. Computer Assoc. Int'l,* 15 F.3d 1013, 1021 (11th Cir. 1994). Once a prima facie case has been established, the defendant may come forward with legitimate reasons for the employment action to negate the inference of retaliation. *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993). If the defendant offers legitimate reasons for the employment action, the plaintiff must then "show that the employer's proffered reason for the adverse employment decision was false and that [retaliation] was the real reason." *Isenbergh v. Knight–Ridder Newspaper Sales, Inc.,* 97 F.3d 436, 440–41 (11th Cir.1996).

In his complaint, Plaintiff contends that Defendants threatened to file a negative report against Plaintiff to the National Data Bank if he contacted an attorney regarding Defendants' decision to remove Plaintiff from the Corporation's on call list. Plaintiff further asserts that he filed a complaint with the EEOC and that Defendants received notice of this fact before the final decision to terminate Plaintiff. Defendants, however, have failed to address the retaliation claim in either their motion for summary judgment or their reply to Plaintiff's response to Defendants' motion for summary judgment. Additionally, Plaintiff did not elaborate on his retaliation claim in his response to Defendants' motion for summary judgment.

If Defendants intend the Court to make a summary judgment ruling based on the retaliation claim, Defendants are hereby ORDERED to submit to the Court a memorandum of law in support of Defendants' motion for summary judgment with respect to Plaintiff's retaliation claim within ten days from the date of this Order. Plaintiff is hereby ORDERED to respond to that brief, if such

brief is filed, within ten days from the date of the filing of Defendants' memorandum.

## C. Supplemental State Claims

In his complaint, Plaintiff seeks recovery for the supplemental state law claims of intentional infliction of emotional distress and wrongful discharge, pursuant to 28 U.S.C. § 1367. The Court will reserve judgment on Defendants' motion for summary judgment with respect to Plaintiff's supplemental state law claims until it rules on Defendants' motion for summary judgment regarding Plaintiff's retaliation claims.

## CONCLUSION

Even viewing the record in a light most favorable to Plaintiff, Plaintiff has failed to demonstrate the existence of a prima facie case of discrimination on the basis of national origin. Even if Plaintiff was able to establish such a prima facie case, he fails to show that Defendants' proffered legitimate, nondiscriminatory reasons for Plaintiff's termination is pretextual. Accordingly, Defendants' motion for summary judgment is hereby **GRANTED** with respect to Plaintiff's discrimination claim.

Defendants are hereby **ORDERED** to submit to the Court a memorandum of law in support of Defendants' motion for summary judgment with respect to Plaintiff's retaliation claim within ten days from the date of this Order. Plaintiff is hereby **ORDERED** to respond to that brief, if such brief is filed, within ten days from the date of the filing of Defendants' memorandum.